King, J.
The case of Stephen Berry, Administrator of the Estate of Thomas Berry, deceased,-plaintiff in error, v. Tena B. Collins, defendant in error, is a proceeding to reverse the judgment rendered in the court of common pleas in favor of Tena B. Collins.
She brought her action against Stephen Berry, the administrator named-, to recover an amount of about of $2,600, claimed to have been earned by her as wages for services performed for Thomas Berry in hisjlifetime, covering a period from August, 1887, until February, 1893, which was perhaps a month after his death.
The record is quite voluminous; a great many witnesses were called, and a great many objections and exceptions are found. These may be said to be classified under perhaps four heads. The first claim that is made is that the court erred in failing to strike out from the petition the plaintiff’s allegation therein found relative to services that where performed, the benefits of which were received by one Strodder Berry, alleged in the petition to have been an inmate of Thomas Berry’s household.
*657 The second error claimed is that the court erred in admitting testimony as to the condition of the house and premises where the plaintiff lived and worked during this period of five and one-half years, as to its furniture and its conveniences for the work she was employed to do.
The third error claimed is that the court erred in admitting testimony as to the admissions of the defendant below, made while plaintiff was engaged in that service, the effect of which was that he would be willing to pay her well, and on one occasion, stated that he would give her a farm.
The fourth claimjmadeUs that the verdict is not sustained by the evidence, and the claim is also made in connection with the admissions of testimony, that the court erred in its charge to the jury upon these several points which will be considered by me in passing upon the testimony.
The plaintiff in the first place alleges in her petition, that in the lifetime of Thomas Berry, about the first day August, 1887, she began service for him as household servant, nurse and housekeeper, at his”request, and faithfully worked and labored for him and cared for him, attended to him and nursed him and one Strod. Berry, an imbecile brother, and a member of his, Thomas Berry’s, household; that she labored there as a house servant and as housekeeper between the first day of August, 1887, until the first day of April, 1893, a period of 296 weeks, which services she avers, were of the reasonable value of $10 per week during all of that period, and that he was during that time sick a great deal of the time so that she was required to take care of him and nurse him; that she received on account of those services during that period, the sum of $300, which she applied upon the total amount which she claims to have earned, leaving a balance due her as she alleges, of the sum of $2,660.
The main matter of this service is denied in the answer, not of the fact that she rendered service for that period, but it is alleged in the answer as a defense that she had entered *658 into that employment under a special contract to labor for $1.50 per week, and that that sum had been fully paid her.
A motion was made to strike out of the petition the allegation that she had done some service for Strodder Berry, but that motion was overruled. There was also, in the course of the trial, some evidence offered tending to show that she had taken some care of Strodder Berry, who appeared by the testimony to have been during all this period, an inmate of Thomas Berrys’ household; that the service which she rendered, consisted only of those services that a housekeeper would have to render to any inmate of a man’s family, such as the care of his room, the cooking of his food and the service perhaps iixcident upon the mending of his clothing; but he was not helpless, nor was he, during any of this period, in physical ill health.
We think the court did not err in not striking that allegation out of the petition, because that is only descriptive of the character of the service which she was called upon to render, and which it is claimed she did render under that employment. We think it was competent to show the character and quality of this service that she rendered Strodder Berry. Thomas Berry was competent to employ a housekeeper for that kind of service, Strodder Berry, being as is stated, an inmate of his household, and the service rendered by her being in the line of that employment.
Considerable testimony was admitted in the case showing the condition of the house and the character of its furnishing, where the plaintiff had served during these years¡ and it was very strenuously argued that this ought not to have been permitted; and it is claimed that it perhaps influenced and prejudiced the jury, and turned away their minds from the true issue in the case,and prompted them perhaps to render a larger verdict than they otherwise would; but we do not find any error in the testimony on that subject.
There are a large number of objections and exceptions to *659 such testimony, but we think that it was fairly permissible to show the character of the service that this woman performed for Thomas Berry. It was entirely proper to show where she rendered those services. In what kind of a house? Was the house in good condition? Were its windows in? Was the roof in good condition? Or, were the windows out and the roof leaky, thereby rendering the house more likely to become soiled and dirty and more difficult to keep in a good and reasonable condition? Were there carpets on the floor, or was it necessary to scrub the floor very often in order to keep it decent for people to live in? Were there conveniences for taking care of it? It is argued — and I don’t know but seriously — however, it seemed to me there might be a tinge of humor in it — that if there were but half a dozen chairs, such as the evidence seems to indicate there were in this house, and just enough dishes to set upon the table upon which three people might eat at the same time, and only one wash tub, and very spare and meager arrangements for keeping house, that the wages of such a housekeeper would be very small; indeed, that she ought not to receive very much. However, that might be received by the jury, if they looked at it in that light, their verdict would perhaps not be disturbed; but they don’t seem to have taken that view of it, and we do not think they took a wrong view of it, nor that the court was wrong in letting that kind of testimony in to show that such services, rendered under such circumstances, might be more valuable, for the reason that few people would be willing to hire out to work and live at such a place.
. It is objected that there was some evidence offered of declarations of defendant. The declarations made at any time of the defendant were quite likely competent, and they were offered either to show that at the time when this employment was entered into, he said that he would pay her well, or, that during the period of that employment she had be *660 come dissatisfied and was not inclined to continue in it, and that then, for the purpose of urging her to remain in that employment, he said he would pay her well; and on one occasion, as was testified, I think, by two witnesses, that he would give her a farm — give either the farm upon which he was then living, or another farm that is indicated in the testimony.
Those declarations were certainly competent. Anything that he said about the character of this employment was competent, no matter when he said it, during this period. It was certainly competent to show, by anything he said, how he might value the services she was rendering. There was no error in the ruling of the court in admitting that class of testimony, and all of it. In that connection, the court refused to allow the plaintiff to show the value of any farm, or of the farm which seemed to have been indicated by the declarations of Mr. Berry, in stating that he would give her a farm. Nothing was done by the court in that respect certainly, which could be prejudicial to the defendant. Circumstances could be easily imagined where that class of testimony would be entirely competent; but it is perhaps not necessary to pass upon that. I might suggest, however, that if there was testimony that went to the jury that could be said to tend to prove that he had engaged this woman under a promise to give her a farm for her services, such an arrangement or contract would be within the statute of frauds, and she could not enforce it, and she might sue, as she did in this case, to recover the value of those services, and the value of the farm would be competent evidence to be given to the jury for the purpose of showing exactly what he intended to pay her. That far it would be competent to show that her services were worth as much as that farm. A verdict would not be disturbed, based upon that kind of testimony. But the court ruled that testimony all out,so that it did not go to the jury, and it did not affect the case at all.
*661 The charge of the court is based partly upon the admission of this testimony to which exception has been taken; What I have said about the testimony applies to the charge in that respect. I will say further, that the defendant submitted some sixteen requests to the court to charge the jury, all of which were substantially refused, although the court read two of them, but so modified them as to take away from them the character that they had when presented. We find, briefly stated, then, that all those propositions or charges, all of them but six or seven, contained abstract, correct principles of law so far as they applied to the case, and they were given by the court in its general charge, and the balance of them that were neither applicable, nor contained correct principles of law, of course, were correctly refused by the court.
The charge of the court is very full and plain, clear and explicit, and in our judgment lays down all of the law that was necessary to be laid down in submitting the issues of this case to the jury; he made it very distinct and very plain to them, and he has seemingly emphasized and enforced upon them the necessity of being satisfied of the clear and fair preponderance of the proof as to the performance of these services and their value; and he clearly and distinctly said to them that the claim made by the defendant that there was an express contract for a specific price for which there had been payment, that the burden of proving that was upon the defendant, and if they found payment, then of course, they would find for the defendant generally; but if they found there was an express contract, and that it had not been complied with, then there was still a balance due the plaintiff, and they should find the amount of that. The court was very careful to instruct the jury that they were to confine themselves, under all the circumstances of the case, to the evidence. Then the question remains, did the jury1 do that? Did they follow the proof in the case and render *662 their verdict in accordance therewith ? They rendered a verdict, I should say, for $1,404, but, on the hearing of the motion for a new trial, the court cut that down to $767.90. We have not been informed, nor can we ascertain from reading the record, by what process pf arithmetic the court of common pleas arrived at that amount, so that the judgment for that amount should be set aside because not sustained by sufficient evidence. We are not prepared to say that it is excessive.
As I have said, this is a very long record. Many witnesses were called — I cannot tell how many — and there is abundance of evidence in this record, if the jury believed it, to satisfy the jury that those services were worth, during all of this period, from $5 to $10 per week — abundance of evidence. There are but two witnesses who testify to a less amount, out of a large number of witnesses who testify upon that subject. Besides that, the witnesses have given in detail and to great length, the character of the services that this woman rendered, and the testimony shows in a general way, briefly stated, that Thomas Berry was a man nearly seventy years old; that he was a bachelor, and that his aim in life had been to amass a fortune and to spend as little of it as possible. He had living with him a brother who was a sort of imbecile, physically able to do something, but had to be looked after. Those two men lived in a sort of hovel —it could hardly be called a house; without any conveniences for taking care of themselves, or being taken care of that men in this day and age would ordinarily expect to have around them. Into that house they brought this girl when she was twenty years old, to be housekeeper, as is alleged in the petition; and as the proof shows, she was house keeper, and in the course of time, she became the nurse of this man, Thomas Berry,who was striken with paralysis two or three times, and about half of this period he was an invalid, and any one who has had anything to do with para *663 lytics, knows to some extent, the character of the services, that have to be rendered.
' He had a number of relatives, and they seem to have visited him only often enough to keep on good terms with him, ■evidently with the idea that his property would come into market sometime. He'had nobody to take care of him; he had nobody to keep his house, and he had no one to attend to those wants which most men when they get to be seventy years old, desire to have done for them.
Now, it is said that for those services the jury should have assessed an amount which some of the witnesses have testified that you could employ hired girls for, and that has been shown to be $1.50 a week; that would be full compensation ; that this house not having any furniture in it, therefore it needed no housekeeper in it; that all it needed was to set out such victuals as were necessary to feed these two men.
A housekeeper has been defined by competent and reliable authority, to be a woman, whether mistress or servant, who superintends the work, of the household; a woman who regulates the internal affairs of a house; one who keeps and guards it. Housekeeping has been defined to be the management of home affairs; the care of domestic concerns.
This girl had all of that, during the period I have mentioned, of nearly five and one-half years; whatever there was of it, she attended to it; she was nurse a large part of that time, and under these circumstances and conditions, that the house was out of repair and ’that it was poorly, meagerly and illy furnished in every respect, and when all these services must have been rendered under great difficulty and discouragement to any woman who had any knowledge about housekeeping and who had any pride in the proper and orderly arrangement of a house.
In the light of this whole record, it seems to us that even the jury did not disregard the proof in rendering a verdict *664 of $1,400. As I_have said before, I do not understand exactly by what process of reasoning the court of common pleas, from looking at the record at least, concluded that this amount was excessive to the extent of nearly $700; but certainly at the amount that it is now fixed at, $767.90, it cannot be said to be excessive, in the light of the testimony that appears in this bill of exceptions. The judgment will therefore be affirmed, with no penalty assessed.
Vickery Brothers, for plaintiff in error.
Withie and Jay Patrick, for defendant in error.